**In the United States Bankruptcy Court**
**For the Eastern District of Pennsylvania**

In re      Anthony Peck                  : Chapter 13
                                         :
                                         :
                    Debtor(s)            : Bankruptcy No. 07-12251 SR

# Opinion

By: Stephen Raslavich, United States Bankruptcy Judge.

*Introduction.*

    The Debtor has objected to the amended claim of eCast Settlement Corporation. The Objection is opposed. A hearing was held on December 12, 2007 after which the Court took the matter under advisement. For the reasons which follow, the Objection will be denied.[1]

*Grounds for Objection*

    Debtor makes three general objections to the eCast claim: first that it is not self-sustaining; second, that the claim includes excessive interest and other charges; and third, that eCast lacks standing. *See* Objection to Amended Claim. Responsive arguments are made to each and every objection.

*The Claim's Facial
Validity and the
Burden of Proof*

---

[1] This matter is a core proceeding as it involves a claim against the estate. *See* 28 U.S.C. § 157(b)(2)(B).

The Objection begins by stating that the "claim does not stand on its own." Objection ¶ 1. This is a threshold challenge to the claim's validity. Under the Bankruptcy Rules, a claim will be presumed to be valid if it "conform[s] substantially to the appropriate Official Form." B.R. 3001(a), (f). If that is done, then the burden of proof shifts to the party objecting to the claim's validity. *In re NuNet, Inc.*, 348 B.R. 300, 307 (Bankr.E.D.Pa.2006)

*The Claim is Based*
*on a "Writing"*

The Debtor's challenge to the claim's integrity is based on Bankruptcy Rule 3001(c):

> When a claim, or an interest in property of the debtor securing the claim, is based on a writing, the original or a duplicate shall be filed with the proof of claim. If the writing has been lost or destroyed, a statement of the circumstances of the loss or destruction shall be filed with the claim."

B.R. 3001(c). Debtor contends that the claim needs to be supported by the account *contract* but is not. *Objection*, ¶ 3. For its part, eCast originally filed the claim with an account *summary* and a written explanation that the account might later be assigned to it. It later amended the claim to include account statements and a bill of sale purporting to transfer the claim from FIA Card Services a/k/a Bank of America (FIA) to eCast. *See* eCast Brief, 9-15. So the parties agree that a "writing" is

2

required; where they disagree is on what that "writing" should be.

A leading commentator points that at this point in the proceeding, a claim serves to inform interested parties of the creditor's right to payment:

> Proofs of claim as filed also provide a basis for a trustee to evaluate claims and form objections to them.  It is to the end of providing sufficient information to the trustee in this task, while not overburdening the filing creditor, that the required contents of the proof are directed.

9 *Collier on Bankruptcy* ¶ 3001.02 (Matthew Bender 15th ed. Revised)  Attaching a "writing" would certainly help in that regard, but where the debtor-creditor relationship is either based on, or generates, various "writings," which would suffice? Indeed, the Bankruptcy Code does not define the term "writing." One Bankruptcy Court reviewed generic definitions of the word and concluded that "writing" would encompass "a legal obligation that is evidenced by any expressive format, set down by hand or typewriting, mechanical or electronic transmissions."  *See In re Cluff*, 313 B.R. 323, 334 (Bankr.D.Utah 2004).  This Court finds that flexible, fact-specific view of the term to be sensible and will use it here.  What is the "legal obligation" between these parties and is it set down in some discernible way?

As between the Debtor and eCast, the legal obligation is the payment of charges incurred on this account on a monthly basis.

3

The account contract would not document the amount of those charges and any related costs. The contract would certainly be evidence of the existence of the financial accommodation, but it would not tell what was owed on the account. This is because the relationship between a credit card issuer and user is not static. Unlike payments under a promissory note or installment agreement, the periodic balance due on a credit card account is variable. That is what TILA contemplates in regulating "open-ended" lines of credit.[2] As the Court in *Cluff* observed:

> Every time a debtor uses a credit card it results in an electronic and/or written transmission. Contrary to some of the Debtors' arguments, it is not the underlying credit card agreement that creates the debt- for that only establishes a line of credit that defines the terms of the parties future transactions-it is the actual use of the line of credit that creates the obligation to repay.

313 B.R. at 334. How is that use documented, if at all?

TILA § 1637 requires that the credit card issuer provide a statement of the account to the user with each billing cycle. *See* 15 U.S.C. § 1637(b). That statement is required to contain a great deal of information about the use of the account for that period: the beginning balance, the amount and date of each charge

---

[2] Defined by TILA as "a plan under which the creditor reasonably contemplates *repeated transactions*, which prescribes the terms of such transactions, and which provides for a finance charge which may be computed from time to time on the outstanding unpaid balance."  15 U.S.C. § 1602(i) (emphasis added)

on the account; the credits applied, the finance charges, the variable periodic rates used to calculate the finance charge; the total finance charge expressed as an APR; the balance on which the finance charge is calculated; the closing balance; the payment deadline to avoid additional accrual of finance charges; and late fees. *Id*. This information would provide the evidentiary support necessary to inform the trustee or debtor of this claimant's right to payment. As between the account *contract* and the account *statements* then, it is the latter that better informs the Debtor (or the trustee) of the "validity and the amount" of the claim. Are account statements part of the record?

Attached to the amended claim are account statements beginning with the month February 2005 onward through January 2007. The balance due on the final statement $12,552.48. That is about $820 short of the amount claimed ($13,374.24). The discrepancy appears to consist of an additional two months of finance charges accruing in February and March 2007. There is attached to the original claim a summary which reflects that. *See* Claim No. 6, Account Summary, filed July 18, 2007. Charges ceased accruing in April, the month when Debtor filed this case. Between what is attached to the original and amended Proofs of Claim, the Court finds that the claim is properly filed and is entitled to a presumption of validity. It is up to the Debtor to

prove otherwise.

*Interest and other Charges*

The Debtor next objects to the rate of interest charged as well as late fees and other finance charges. He explains that "without a copy of the contract, there is no justification for interest. Nor is their justification for late fees and other finance charges that are indicated on the statements." Objection, ¶ 4. Alternatively, he argues that if interest is chargeable, then it may not exceed the applicable legal rate of 6%. *Id*. ¶ 5.

*Usury*

The Court takes up first the usury claim. As a legal matter, the argument is a non-starter. Section 85 of the National Bank Act (NBA) provides that a national bank may charge "on any loan ... interest at the rate allowed by the laws of the State ... where the bank is located...." 12 U.S.C. § 85. It has long been recognized that, under § 85, a national bank can charge an interest rate in a foreign state higher than the laws of the foreign state permit, if it is authorized to do so by the laws of the state in which it is located. *Marquette National Bank of Minneapolis v. First of Omaha Service Corp.*, 439 U.S. 299, 307, 99 S.Ct. 540, 545, 58 L.Ed.2d 534 (1978). The High Court has further interpreted "interest" in this context to include late fees. *See Smiley v. Citibank (South Dakota), N.A.*, 517 U.S. 735,

6

747, 116 S.Ct. 1730, 1736 (1996); *see also Beneficial National Bank v. Anderson*, 539 U.S. 1, 123 S.Ct. 2058 (2003) (holding that §§ 85 and 86 of the NBA completely preempt state law usury claims against national banks); *In re Community Bank of Northern Virginia*, 418 F.3d 277, 295-96 (3d Cir. 2005) (explaining that due to §§ 85 and 86 of NBA "there is, in short, no such thing as a state-law claim of usury against a national bank.") The Debtor's usury challenge is utterly without merit.

*The Right to Charge*
*Interest, Late Fees*
*and Other Charges*

   Next, the Court turns to the Debtor's challenge to the inclusion of interest, late fees and other charges in the claim. At the hearing, the Debtor explained that "if eCast wants to prove late fees, interest rate, those kinds of things, then they're going to have to bring in a copy of the contract." Transcript, 4.  As a general matter, eCast disputes Debtor's premise that the contract must be attached. *See* eCast Brief, 15-17.

   The Court finds eCast to be correct here.  Given that the Court has found the claim to be presumptively valid, it is the Debtor who has it backwards: if the *Debtor* wishes to *dis*prove the validity of the other charges, then it is the *Debtor* who must prove what fees may be charged, if any.  And what evidence there is falls squarely in favor of eCast.  The account statements

provided contain a "Finance Charge Schedule" which sets forth how that fee is calculated.  It categorizes each type of use on the card (purchases, balance transfer, atm, etc.) and then sets forth the periodic rate of interest (as well as corresponding APR) applicable to each.   All of the 15 months of account statement in the record assess the finance charges he complains of. Because there is no indication that the charges were disputed by the Debtor during that time period, the Court finds them to be legitimate.  If Debtor truly believes that these finance charges have been erroneously calculated, then he must offer proof of that.  Curiously, he never explicitly says that the rate is something other than what is charged.  Instead, he insists that the contract must be attached in order to allow the finance charges.  This is offered without a shred of supporting legal authority.  As a result, the Debtor challenge to interest and fees is rejected.

*eCast's Standing*

The Court turns now to Debtor's contention that eCast has "failed to establish that it is the true owner or assignee of the claim." Objection, ¶ 8.  Although it never acknowledges the point, the dispute over "standing" is nothing more than a thinly disguised challenge to the claim assignment.  And this argument is not without some irony: does the Debtor himself have standing to raise this very issue?

Bankruptcy Rule 3001 provides in pertinent part

> If a claim other than one based on a publicly traded note, bond or debenture has been transferred other than for security after the proof of claim has been filed, evidence of the *transfer* shall be *filed by* the *transferee*. The *clerk* shall *immediately notify* the *alleged transferor* by mail of the filing of the evidence of transfer and that objection thereto, if any, must be filed within 20 days of the mailing of notice or within any additional time allowed by the court. *If the alleged transferor files a timely objection* and the court finds, after notice and a hearing, that the claim has been transferred other than for security, it shall enter an order substituting the transferee for the transferor.

B.R. 3001(e)(2) 1991 (emphasis added). The Advisory Committee Note to the 1991 Amendment explains:

> Subdivision (e) is amended to limit the court's role to the adjudication of disputes regarding transfers of claims.... If a claim has been transferred other than for security after a proof of claim has been filed, the transferee is substituted for the transferor in the absence of a timely objection by the alleged transferor. In that event, the clerk should note the transfer without the need for court approval. If a timely objection is filed, the court's role is to determine whether a transfer has been made that is enforceable under nonbankruptcy law.

B.R. 3001, Advisory Committee Note (1991). By eliminating notice of claim assignment to third parties, the rule now limits the Court's role to determining disputes between assignee and assignor. *In re Lynn*, 285 B.R. 858, 861 (Bankr.S.D.N.Y.2002) Was the claim assigned to eCast in accordance with the rule?

9

This claim was originally filed by eCast as the agent[3] of FIA. *See* Claims Docket, Proof of Claim #6. Attached to that claim was a statement that eCast's interest might change. Should the account be charged off by FIA, it explained, then eCast would thereafter own the claim. *Id.* And this appears to be what happened: two months after filing the claim for FIA, eCast filed a Transfer of Claim Other Than For Security to itself. *See* Docket # 71. That document identifies FIA as the transferor and eCast as transferee. It also identifies the amount of the claim, the last four digits of the account number and the date that the original claim was filed. *Id.* Save for Debtor's listing the claim as disputed, that information is otherwise consistent with what appears in Debtor's Schedule F. *See* Schedule F. Three days after the Transfer of the Claim was filed, the Clerk's Office formally notified FIA of that filing. *See* Notice of Transfer, Docket # 72. Significantly, FIA *did not object* to the transfer. One month after that, eCast filed an Amended Proof of Claim as assignee of FIA.

This evidence demonstrates to the Court that the claim was assigned to eCast. Had there been something amiss with the assignment, then it was the right of FIA—not the Debtor—to object after being notified of it. But it did not. *See Viking Assocs.*

---

[3]The rules allow a creditor's agent to execute a claim on its behalf. *See* B.R. 3001(b).

*v. Drewes (In re Olson),* 120 F.3d 98, 102 (8th Cir.1997) ("The text of the rule is clear that the existence of a "dispute" depends on an objection by the transferor."); *Troy Sav. Bank v. Travelers Motor Inn*, 215 B.R. 485, 491 (N.D.N.Y.1997) ("The Bankruptcy Court correctly informed the Appellant that (e)(2) only permits the transferor to object to the transfer."); *accord In re Univ. Towers, Inc.,* 227 B.R. 727, 729 (Bankr.W.D.Mo.1998); *In re Crosscreek Apartments,* 211 B.R. 641, 646 n. 7 (Bankr.E.D.Tenn.1997) (explaining that the rule is designed primarily to meet the due process requirement that a creditor be given notice and an opportunity to object to any purported transfer of its claims against the estate"); *cf In re Jordan*, 146 B.R. 31, 32 (D.Colo.1992) (explaining that the debtor is not entitled to notice of the assignment); *In re Lynn*, 285 B.R. at 862 (holding that the debtor does not have standing to object to a claim assignment itself); *In re Premier Operations*, 294 B.R. 213, 219 (S.D.N.Y. 2003) (same).  Without an objection from the party who would be adversely affected by an improper assignment, the Court must conclude that the assignment was valid. Accordingly, the Court finds eCast to very much have standing to assert this claim.

*Summary*

The Objection to the Amended Claim of eCast Settlement Corporation will be denied.  The claim is supported by a writing

11

which entitles it to a presumption of validity which the Debtor has not rebutted.  There is also no evidence that interest charged or other fees assessed are not provided for by the parties' agreement.  Finally, the Debtor lacks standing to challenge the assignment of the claim.

An appropriate Order follows.

By the Court:

_____
Stephen Raslavich
United States Bankruptcy Judge

Dated:    February 13, 2008

**In the United States Bankruptcy Court**
**For the Eastern District of Pennsylvania**

| | |
|---|---|
| In re | : Chapter 13 |
| | : |
| Anthony Peck | : |
| | : |
| Debtor(s) | : Bankruptcy No. 07-12251 SR |

## Order

**And now,** upon consideration of the Debtor's Objection to claim No. 6 of eCast Settlement Corporation, after a hearing, and for the reasons set forth in the attached Opinion, it is hereby:

**Ordered**, that the Objection is denied and that the claim is allowed in full.

By the Court:

*Stephen Raslavich*

Stephen Raslavich
United States Bankruptcy Judge

Dated: February 13, 2008

<u>Interested Parties</u>:

George Conway, Esquire
Office Of The U.S. Trustee
833 Chestnut Street
Suite 500
Philadelphia PA  19106

<u>Counsel for Debtor</u>
Vicki Piontek, Esquire
24 West Governor Road
Hershey, PA 17033


<u>Counsel for eCast Settlement Corp</u>
Natalie M. McGhee, Esquire
William McNeal, Esquire
16 General Warren Blvd
P.O. Box 3001
Malvern, PA 19355

<u>Chapter 13 Trustee</u>
Frederick J. Reigle, Esquire
Chapter 13 Trustee
2901 St. Lawrence Ave
P.O. Box 4010
Reading PA 19606